May it please the Court. Deanna Lamb appearing on behalf of Mr. McNeal. And there's no doubt that Troy McNeal was being charged with a crime for which a DNA sample might have been justified. But he still had the right to an attorney, to due process, and to Fourth Amendment protections. And unfortunately, he had an attorney who rendered ineffective assistance of a particular kind, and that's abandonment. It's abandonment because it's the particular variety that's not a sleeping lawyer, it's not a phone-in lawyer, or a potted plant. It's a lawyer who simply did not show up. And that requires per se reversal under primarily Wade, along with Strickland and Cronic. Isn't there an element of causation and result that what if he had had Johnny Cochran and Ted Olson there? They still would have taken the DNA sample. So what is the harm? If Johnny Cochran had been there, they may not have gotten the order that they did. And the cases that I cite talk about Fourth Amendment protections. Even though there are administrative laws that deal with DNA databases when someone has been particularly convicted of a crime, Mr. McNeal had not been convicted. And he was only facing charges. So if you cite Wade, and there's also Gilbert, and they seem to indicate that the Supreme Court's view that handwriting samples, fingerprints, blood samples, all of those, that's not a critical stage. And given that we're just seeing whether the State court's decision was an unreasonable application of Supreme Court precedent, I'm having trouble seeing what cases help you say that the State court is objectively unreasonable as to termination in light of Wade and Gilbert. Well, it's unreasonable because he did not have counsel who could argue, and the trial court had a But if it's not a critical stage, that doesn't really matter, right? So the Supreme Court says taking fingerprint and blood samples isn't a critical stage where not having a lawyer is per se reversible. And this sounds more like, the DNA sample sounds more like fingerprint and blood samples, and there's no Supreme Court case on DNA samples. So I'm having trouble seeing why the State court was unreasonable in saying it wasn't a critical stage. It's not a per se reversal without an attorney present. Well, the cases that talk about the taking of are similar to the Lewis case. It's not a matter of the obtaining of the court order, which was necessary in this case where it would not be with fingerprints and some of the other things that are directly observable. This is an invasion. Isn't the main criteria of what's a critical stage? I guess the case law is a little confused because there are It's a critical stage. We can assume it's a critical stage, meaning you had a right to have a lawyer. But whether it's a critical stage, meaning there's no It's a per se reversal isn't necessarily the same inquiry. And I know our case law and the Supreme Court case law is a little hairy about this, but it seems to me that you need to divide up the question of did he have a right to have a lawyer there from not having had a lawyer there. Is it a per se reversal? All right. Do you see that both two is one question, or do you think that there's two questions? Well, I agree that there are two questions, and it's difficult to separate them out. In terms of critical stage, we have some critical stage, meaning he had a right to a lawyer, that kind of critical stage. Yes. Well, that's hard, I mean, at least for me to disagree with. It was a motion in a courtroom, and you'd think he has a right to a lawyer. But I'm also having a hard time seeing why there should be a per se reversal when there were lots of ways to correct for that afterwards, including not submitting, not admitting the evidence. Well, part of the issue is, as they pointed out in the motion itself, he had notice or, rather, his attorney did not get actual notice, according to the record here. There's no proof of service, but that the motion says very sketchy facts, not enough for the court to make a weighing of Fourth Amendment rights, and it also says if the court orders it, if he refuses, then there are sanctions at trial. So this is not automatically the court orders it and that's the end of it. But how long a time was there between the time that was collected and the actual trial? A long while. There was many years between the time it was collected. And he was pro se for a while, then he had a lawyer, then he had a special DNA lawyer. Presumably, those lawyers later on could have challenged the admission of the DNA evidence on the grounds that it shouldn't have been ordered or it was improperly Right? Well, I have to agree that there was a time frame between the order and the next court appearance where the attorney appeared and simply said, you know, Mr. McGill. I'm not even talking about that. I understand there's a fuzzy record about that. But there were plenty of other instances to correct for this problem, if there were a problem, with a lawyer. It would not have been the same kind of correction as if he had had a lawyer there who had litigated and advised him. Well, let me ask you something. What is the case law about suppression hearings? I know it's a critical stage. You have a right to a lawyer. But if you don't have a lawyer, is the whole trial gone? If the evidence is introduced and at a trial, is the whole trial reversed because you don't have a lawyer at the suppression hearing? I would doubt it. Well, typically if the motion to suppress should have been granted and it was not, on appeal what the court does is analyzes that in terms of harmless error and says this should have been suppressed. All right. But what if you didn't have a lawyer at the motion to suppress? Right? I believe there is case law, and I'm certainly willing to assume that that is a critical stage. You have a right to a lawyer. Right? Okay. If then there is no you don't have a lawyer and there is no suppression, is the whole trial reversed? No. Isn't that the problem here? What is reversed in that situation is it can be if the people's sole evidence is based on that seized property. If that is only part of the evidence that the people rely on, then there is an analysis of that. But you're not arguing here. You're not arguing Strickland at all. You're not arguing any kind of harmless or any kind of prejudice. Is that right? You're not raising a Strickland argument. We're not looking at whether the attorney's performance was sufficient and that it prejudiced the your client. Is that right? This was raised as a per se issue. A chronic, right? Yes. And those are key terms, because chronic is a trial case, so we can't just say that. So are you saying per se, meaning that the DNA evidence should be suppressed and then we look at harmlessness with regard to the trial, or per se overall, or what exactly?  And certainly if, you know, in terms of a remedy, what would be the remedy for this? Suppress the DNA. Was there ever a motion to suppress? They had a lawyer who could have made a motion to suppress the DNA. Did they ever do that? They never did that. They had challenges in terms of Kelly Fry and, you know, at the trial talked about the taint and the, you know, the transfer and contamination and chain of custody and all of those things, which could have been considered by a court if there had been counsel to argue those things. And that was not done. And I guess that it's not specifically the problem. They could have made a motion saying he wasn't represented at the DNA hearing and all the DNA evidence should be gone. But they never did that. Right. And especially because it's the same attorney who appears and doesn't do anything to protect her client's rights. No, I thought it wasn't the same attorney. I thought she was gone right after that anyway. She was gone shortly, by the next March. She was gone. So there was plenty of time for the new lawyers years later to have done it, but they never did it. It could have been done, yes. And I have to agree to that. Okay. Your time is up. We'll give you two minutes in rebuttal. Thank you. We have a ridiculous number of sirens going by here, almost one an hour or more. So you can just wait a minute if you like. Okay. Thank you. Go ahead. May it please the Court, Sean McCoy, Deputy Attorney General. A critical stage is a very limited situation. The reach of an IAC, ineffective assistive counsel claim, is much broader. All right. Let me ask you the question that I just asked before. Are you saying he didn't have a right to a lawyer at this hearing, or are you saying that it wasn't a critical stage in the chronic sense, that it's a per se reversal? He had walked in there with a lawyer. Could the judge have said, no, lawyer, you have to stand outside? No. Couldn't be, right? Couldn't be. So he had a right to a lawyer at that hearing. Yes. He had a right to a lawyer generally within the Sixth Amendment right to counsel. The more specific question is, was this a critical stage? But that is, you see, this is the problem with the case law, because the question of when you have a right to a lawyer seems to depend on whether it's a, quote, critical stage. That's one use of the term critical stage. At other points, they seem to be using the term critical stage as with regard to chronic reversals. But generally, it's a Sixth Amendment standard. Well, unfortunately, I'm not the Supreme Court, and the Supreme Court's definition of critical stage is one where rights are irretrievably lost, and so if you look at this situation, was any right irretrievably lost? In Gilbert and Wright, Gilbert involved the taking of a handwriting exemplar. Wright was an appearance by a telephonic, and at least their counsel appeared. But even more recently, the other circuits have dealt with, like Vann, for example, where the attorney was absent during a motion to consolidate. Certainly, a motion to consolidate affects a defendant's rights going into trial more than a motion or request to obtain some kind of exemplar or sample. In this case, the ---- But let me ask you a question. Is it your position that they didn't even need this motion, that the State could simply have gone and taken the DNA evidence without asking the judge? At some point, it seems to me that that's what you're arguing. No, I am not arguing that. I don't know whether that would be the case. I'm not going to venture an opinion there. And quite frankly, I would prefer the people who build the cases I have to defend do things ---- Go ask the judge. Do things such as bring motions and request the court's permission to act in this way. It ---- I'm ---- I think that there's an equal case to be made that on application they could have obtained a warrant to take the sample. In this case, they chose to do it by way of noticed motion since they were post-arraignment on the complaint. Well, that's really what I meant. Could they have done it as a warrant, essentially? So which would have been ex parte and where he wouldn't have had a right to a lawyer? They quite possibly could have. In either case, whichever vehicle they chose, it doesn't matter. The defendant didn't suffer any irretrievable loss of rights. He still had the ability to bring a motion to suppress the taking of the sample if he disagreed with the propriety of the superior court granting the motion. He still had the right to challenge the admissibility of the evidence in limine. In fact, that was done through the Kelly Fry hearing, and appellant below even conceded that that attack was comprehensive. That's in the court of appeal, third district court of appeal appellate brief at page 30. The defendant himself, while pro per, brought a motion to compel the results of those tests and even requested a retesting of the sample. I'm not sure whether that was ever done. This occurred during the limited period of time that he was pro per. Ms. Vorders, the attorney who failed to appear at the motion to compel, was only his attorney for a short period thereafter. By October 24th, the case had been assigned to a different public defender. Almost a year later in July, the defendant went pro per and then had counsel reappointed for trial. Go ahead. So the argument that was made to the State habeas court, was that the argument that we're doing now, that the absence of counsel at that motion to compel the DNA testing, constituted the complete absence of counsel at a critical stage and therefore was per se reversible. Is that the argument that the State court rejected? No. The argument that the State court rejected was that the denial of the Marsden motion two days before, three days before, led to a breakdown of the relationship such that counsel was ineffective when she failed to appear. Admittedly, the argument below by different counsel then, who presently representing Petitioner, was somewhat convoluted. Strictly, the Marsden trial court denied appellant his State and federal constitutional rights to effective assistance of counsel in due process when it denied his Marsden request to replace court-appointed counsel with another attorney despite a clear breakdown in communications between appellant and counsel. And this error led to actual prejudice within a matter of days when that attorney abandoned him. That was also the argument made in the State petition for review. And, again, the question is whether this was a critical stage. But it says in the State court opinion that defendant argues that it's irrelevant that the motion to compel likely would have been granted anyway. He claims that counsel abandoned him at the hearing on the motion which constituted an actual denial of his right to counsel, which is reversible per se. Isn't that the same argument? That's what the State court opinion says. I'm sorry? Yes. That's what the third district decided. Right. So that is the same argument, i.e., it's reversible per se. That was the argument. In the third district? That's kind of a convoluted way to get there. The third district. Right. What's convoluted about it? Well, again, it wasn't clearly presented that way. The third district. They say it was. He says he claims that counsel abandoned him at the hearing on the motion which constituted an actual denial of his right to counsel, which is reversible per se. And the third district also found that it wasn't a critical stage. Well, I understand that. But we were just discussing what was argued. They said it was argued. Well, then I concede that that's what the third district felt that was argued. All right. And so the State court, having reached that determination, our job at ENPA review would be to say whether that was objectively unreasonable and whether there is a Supreme Court opinion on point, and I guess opposing counsel had cited Gilbert or had cited Wade on that. But what do you think is the Supreme Court precedent that supports the State court's ruling that that is not a critical stage? Well, we go back to the morass that is what defines a critical stage. And your Honor spoke earlier about clearly established at the time of the State court decision. Well, motions to compel exemplars, hearings on motions to consolidate, these sorts of things where rights are not irretrievably lost do not constitute critical stages under chronic and are more appropriately analyzed under Strickland. And in this situation where the prosecutor brought a motion to compel a DNA sample and there was no irretrievable right, no irretrievable loss of the body. Well, the one irretrievable loss was that somebody went in and took a sample from him. Nonetheless, that had no bearing in and of itself on the DNA. On the trial, but it may have had a bearing. I mean, he may have not wanted somebody going in his mouth and taking a sample. But he lost no right with respect to his right to trial. He still had the ability to seek to exclude that. Had there been a legal basis to do so, he still had the ability to challenge its admissibility at trial. It did not foreclose any avenue of defense. It did not foreclose his ability to present any defense. It did not resolve his guilt one way or the other. I have one question. The State's Court of Appeals actually decided that the reason it wasn't a critical stage was because he has, defendant has failed to demonstrate that counsel's non-appearance occurred at a critical stage in that defendant's counsel appeared subsequently and did not challenge the order, which had not yet been acted upon. Now, I gather do you defend that conclusion in the sense that is there a record which would establish that the defendant's counsel had notice of the ruling and an opportunity to challenge it? The presumption is that a duty is performed. The State Court record showed that the clerk was directed to contact counsel. There was no issue of notice ever presented. She was supposed to contact her to see why she wasn't at that, during the hearing to say where are you, but not, there was no, nothing to say that she was supposed to contact her and tell her what the result was, was there? The record's unclear as to exactly what counsel was, what the clerk was directed to call counsel and inform her of. In any event, however, the defendant who was present certainly knew that the motion had been granted. Counsel certainly knew that the motion had been granted at some point because of the motion to compel later on and the motion to challenge the admissibility of the DNA evidence. But that was way later. But I mean, the sense, I'm not saying this is dispositive of your case, but it doesn't, it seems to me, make the reliance on the State Court ruling a little flimsier because the State Court ruling wasn't that this isn't a critical stage in general. It was that it wasn't a critical stage because of the particular circumstances which may not actually exist. Not at all. The fact that the State Court focused on a specific event doesn't invalidate the conclusion if the conclusion is supported by the record. But I'm asking you, is the conclusion supported by the record in the sense that her counsel did not challenge the order when it had not yet been acted upon? Well, I don't know that that specific fact is dispositive of the analysis when clearly whether the order was acted upon at that point or not, it was at some point acted upon, and in any event, counsel had ample opportunity between that time and the admissibility. Therefore, there's no critical stage. Over your time, thank you very much for your argument. Excuse me. I think there was a question earlier about whether or not there could have been a warrant issued for the same type of material, which would have also required probable cause and consideration of Fourth Amendment in due process. And also you're not going into his files, you're going into his body. And so it's a different analysis than once charges have been filed and, you know, you're at this stage of the criminal litigation, they don't have a right to just go into the jail for Mr. McNeil. There's a Messiah problem there as well. All right. But I'm asking, but what about the warranted question? Could they have just gone to a magistrate? Did they need the motion? I suspect they didn't need the motion. Well, they obviously felt they needed the motion and they laid out the consequences if he refused. And the problem with that is that Mr. McNeil himself didn't receive the motion. The invisible abandonment lawyer received the motion. So, you know, this is a ---- Received it meaning was notified of it? What do you mean received it? The ---- Mr. McNeil never received any advice from his counsel about the consequences of a ruling. That's part of the reason for having the lawyer. Part of the critical stage factors is that a skilled lawyer is useful in helping the accused to understand the legal confrontation from Hovey. You go back to those critical stage factors. And once the barn doors open, you know, challenges in limine are a different matter. And the warden cites to U.S. v. Asch. And I think that that's particularly apropos because it says there can be a substitute for counsel at the pretrial confrontation that might make it not a critical stage and that it was a lineup case. And they said a lineup without the presence of counsel might be reduced so that it's not a critical stage if there are certain regulations and certain things in place. And it is a fundamental principle to apply here because in a lineup situation, counsel serves a particular purpose. It's not just that you have a lawyer there. You can object to the particular people who are going to be composed in the lineup. You can, and either they will change the lineup or you as the attorney may say, no, we're not doing this lineup. And there are sanctions that happen when you refuse to allow your client to be in that lineup. But you say, no, I don't want to challenge later on at trial whether or not this was unduly suggestive. You've got a six-foot defendant and pygmies and you can't do that. And so my client is not going to be in that lineup. And because once the barn door is open, it's a different matter later on to come back and object and say this was unduly suggestive. Okay. Thank you both very much for your arguments. It's an interesting case. The case of McNeil v. Adams is submitted. We'll go on.
judges: Goodwin, Berzon, Ikuta